# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JOSEPH LAGANA | * |
| Plaintiff | * |
| v | *  Civil Action No. PJM-10-1032 |
| SHARON BAUCOM | * |
| Defendant | * |

## MEMORANDUM OPINION

Pending is Defendant's court-ordered Reply concerning whether a policy exists that precludes medical prescription of pain relievers. ECF No. 52. Although he did not seek leave to do so, Plaintiff has filed a Surreply, which shall be considered. ECF No. 54 and 56. No hearing is necessary.

Also pending are Plaintiff's Motion for Reconsideration of the Filing Fee (ECF No. 41) and Motion for Temporary Restraining Order (ECF No. 44). In his Motion for Reconsideration, Plaintiff requests the Court to revisit its decision waiving payment of an initial partial filing fee, but requiring future payments of the fee in accordance with 28 USC §1915.[1] Plaintiff states he does not have an institutional job but if he did, deductions for the partial payments would not allow for him to pay for basic necessities.

In other civil actions filed with this court Plaintiff has been granted in forma pauperis status. There have been no payments received from Plaintiff's account in the instant case. In light of the fact that Plaintiff is a vexatious litigant, requiring some of the cases he has filed to be

---

[1] Under the statute, deductions from Plaintiff's inmate account will not occur unless he has a minimum of ten dollars in his prison account. Deductions are further limited in this Circuit by the dictates of *Torres v. O'Quinn*, 612 F. 3d 237 (4th Cir. 2010).

administratively closed[2] until other earlier filed cases are completed, and in light of the fact that he is not yet required to pay a fee in most of those cases, the motion for reconsideration shall be denied.

In his Motion for Temporary Restraining Order Plaintiff seeks to mandate an examination by an independent orthopedic doctor and implementation of all treatment recommended by the doctor. ECF No. 44. In the alternative Plaintiff requests an order requiring Defendant to provide him with pain relief medication that is equivalent to narcotic pain relief provided to other inmates. *Id*.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Natural Resources Defense Council, Inc*, 555 U.S. 7, 129 S.Ct. 365, 374 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds, _U.S. _, 130 S.Ct. 2371, 176 (2010), reinstated in relevant part on remand, 607 F.3d 355 (4th Cir. 2010) (per curiam). Plaintiff cannot demonstrate that he is likely to succeed on the merits of his claim for reasons set forth herein. Accordingly, the motion shall be denied.

**Background**

Plaintiff suffers from osteoarthritis of the knees for which he has taken over the counter pain relievers known as NSAIDS.[3] He claims the medications provided do not relieve his pain

---

[2] *See e.g.*, *Lagana v. J. P. Morgan, et al.*, Civil Action No. PJM-10-3625 (D. Md.) and *Lagana v. J.P. Morgan, et al.*, Civil Action No. PJM-11-85 (D. Md.)

and have caused him to experience serious gastrointestinal side effects. Plaintiff alleges he had been denied a prescription of Tramadol (also known as Ultram), a narcotic pain reliever, by Dr. Tessema, P A Sparks, and Dr. Ottey, all of whom told him Defendant Baucom had formulated a policy against the use of Ultram due to concerns about addiction to the drug. He claims other pain relievers were ineffective and although cortisone shots were prescribed, they were not received for four months. Plaintiff also claims that other prisoners are receiving stronger pain medication than he is prescribed and he is denied the medication in retaliation for filing legal action. ECF No. 37 at Att. 7, p. 1.

Defendant Sharon Baucom is the medical director for the Division of Correction (DOC). ECF No. 20. She claimed in her initial response that she was not directly involved in decisions regarding Plaintiff's care and is entitled to dismissal from this case. *Id*. Defendant failed to provide a declaration under oath addressing the allegation that she formulated a policy foreclosing the possible use of Ultram to treat Plaintiff's pain. ECF No. 42. She was ordered to address that allegation as well as related claims raised by Plaintiff concerning her involvement in his medical care. ECF No. 43.

Defendant states that her role as the Director of Clinical Services for the Maryland Department of Public Safety and Correctional Services (DPSCS) is administrative. She states that she does not practice medicine, nor does she determine which inmates should receive pain medication of any type. She further notes that the DOC uses private medical and pharmaceutical contractors to deliver services to inmates committed to their custody, and these private contractors employ their own statewide medical directors to whom they report directly.

---

[3] He claims he was given NSAIDS for so long he "ended up with bloody stool" and could only take extra strength Tylenol and Nortriptyline ( an antidepressant), both of which are ineffective. ECF No. 37 at Att. 7, p. 1.

With respect to pharmaceutical services, Defendant states there is a Pharmacy and Therapeutics Committee made up of members of the pharmacy and medical vendors. ECF No. 50 at Ex. 1. The Committee identifies and develops drug formularies and policies. Defendant states her role with respect to pharmaceutical services is limited and may sometimes involve ordering a review of narcotics use within the DPSCS. She has never published a pain management policy foreclosing the use of pain medication in any individual case. In addition, Defendant states that in cases where there appears to be an overuse of narcotics or there is a potential for abuse, the Committee may bring the case to the attention of medical staff involved and request development of alternative treatments. The Committee does not, however, order specific denials of narcotics to individual inmates. ECF No. 50 at Ex. 1.

## Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The

court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

5

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virgiinia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) *quoting Farmer* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted. *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000); *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Plaintiff disputes Baucom's statements that she is not directly involved in medical care decisions for any inmate. ECF No. 54 and 56. He submits a partial medical record prepared by Lisa Schindler, PA on January 21, 2011, which states:

> Consult presented 1/21/11. Dr Getachew & Wexford agreed to have the cortisone injection performed on site by Greg Flury PA-C w/ Dr Getachew directly observing **if Dr Baucom is agreeable** w/ this. Dr Getachew is to contact Dr Baucom. He will let us know her opinion on this matter.

(emphasis supplied) ECF No. 54 at p. 3. Plaintiff asserts that this record establishes that Defendant is involved in decisions regarding his medical care, contrary to her assertions otherwise. The partial record does not, however, concern a decision regarding medical care. Rather, it concerns a decision where the cortisone injection procedure will be performed. There

is no indication that Defendant has been directly involved in Plaintiff's medical treatment decisions. Moreover, Plaintiff's assertion that Defendant's motive is retaliatory is without support in the record. The claims of retaliation are based only on Plaintiff's speculation.

To the extent that Defendant has been tangentially involved in medical care within the DOC, her role is supervisory and does not form the basis for civil rights liability. Plaintiff's claim that Defendant "could have intervened" in his medical care decisions is not evidence that Defendant actively prevented him from receiving alternative medication that might alleviate his pain. ECF No. 56 at p. 1. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir.2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir.2001) (no respondeat superior liability in a Bivens suit). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.' " *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.2001) *citing Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.1984).

Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994). The evidence submitted by

Defendant establishes that her limited role precludes her involvement in Plaintiff's care decisions. Thus, she is not liable under a theory of supervisory liability.

Plaintiff's claim regarding his medical care would fare no better if he had named as defendants the doctors whom he alleges denied him access to narcotic strength pain medication. *See Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985) (disagreement with medical opinion is not deliberate indifference). Where, as here, an alternative treatment[4] designed to address the pain experienced is implemented, deliberate indifference is not established. Plaintiff was provided cortisone injections to the arthritic knee for purposes of alleviating his pain. There is no indication that other pain management modalities will not be tried if current treatments fail. Thus, there is no evidence of a callous disregard for the pain he experiences.

Accordingly, by separate Order which follow, Defendant's Motion to Dismiss or for Summary Judgment, construed as a Motion for Summary Judgment, shall be granted.

May 31, 2011

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[4] Plaintiff has been provided with knee braces and cortisone shots to address his pain.